BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
**LAW OFFICE OF BRIAN D. SHAPIRO, LLC**
510 S. 8th Street
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0914
Email: brian@brianshapirolaw.com

*Attorney for Leisa Whittum*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LEISA WHITTUM<br><br>Plaintiff<br><br>vs.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION, a Minnesota Non Profit Corporation, GC SERVICES, LP, a Delaware Limited Partnership, and DOES 1-20 inclusive.<br><br>Defendants. | Case No. 18-cv-01495<br><br>COMPLAINT ARISING UNDER 34 CFR 682.140, the Federal Family Education Loan (FFEL) Program; 20 U.S.C. §§ 1088 – 1098g, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, to obtain monetary damages, a permanent injunction and other equitable relief for GC Services' violations of the FDCPA, and under the Declaratory Judgment Act, 28 U.S.C. § 2201 with particular relief as follows:<br><br>1. Breach of Fiduciary Duty<br>2. Breach of Contract<br>3. Unjust Enrichment<br>4. Conversion<br>5. Declaratory Relief<br>6. Violation of the Fair Debt Collection Practices Act. |

LEISA WHITTUM, by and through her attorney, Brian D. Shapiro, Esq. of the Law Office of Brian D. Shapiro, LLC bring this complaint ("Complaint") against EDUCATIONAL

CREDIT MANAGEMENT CORPORATION and GC SERVICES, LP, and alleges as follows:

## THE PARTIES

1. Plaintiff, Leisa Whittum ("Whittum") is an individual who resides in Clark County, Nevada.

2. Based upon information and belief, Defendant, Educational Credit Management Corporation ("ECMC") is a nonprofit corporation that is registered within the State of Minnesota.

3. ECMC, in part, provides support for the administration of the Federal Family Education Loan Program as a student loan guarantee agency.

4. Based upon information and belief, Defendant, GC Services, LP ("GC Services") is a Delaware Limited Partnership.

5. Based upon information and belief, GC Services is an authorized agent of ECMC.

6. The true names and capacities of certain other Defendants (collectively as "Roes" and/or singularly as "Roe") are unknown to Whittum at this time. Whittum, based upon information and belief, states that every "Roe" is responsible in some matter for the acts and omissions alleged herein. Whittum will provide the true names of each Roe Defendant when the same have been ascertained.

## JURISDICTION AND VENUE

7. This is an action arising in part under 34 CFR 682.140, the Federal Family Education Loan (FFEL) Program; 20 U.S.C. §§ 1088 – 1098g, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, to obtain monetary damages, a permanent injunction and other equitable relief for GC Services' violations of the FDCPA; and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

8. This United States District Court of Nevada has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1332 and 1367, and under 15 U.S.C. §§ 45(m)(1)(A) and 1692k.

9. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. §1391(b)-(c).

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

10. In approximately 1982, Whittum began attending National University in San Diego California ("University").
11. To assist Whittum in paying for the University, she applied for two student loans.
12. On October 9, 1982 Whittum signed a promissory note and disclosure statement to obtain a student loan with Citibank ("Loan Number 1").
13. Loan Number 1 was for a total of $2,500.00 of which there was a prepaid finance charge of $54.15 as a Guarantee Fee and $125.00 as an Origination Fee.
14. The total amount financed for Loan Number 1 was $2,320.00.
15. Whittum utilized Loan Number 1 to help pay for the University.
16. On or about April 30, 1984, Whittum signed a promissory note and disclosure statement to obtain a second loan with Citibank ("Loan Number 2").
17. Loan Number 2 was for a total of $2,500.00 of which there was a prepaid finance charge of $56.33 as a Guarantee Fee and $125.00 as an Origination Fee.
18. The total amount that was to be financed for Loan Number 2 was $2,316.67.
19. In May 1984, Whittum was injured in an automobile accident ("Accident").
20. As a result of the Accident, Whittum was temporally unable to continue her enrollment with the University.
21. In 1984, Federal Regulations provided in part that after receiving a check for a student, if the school determines that the student has not enrolled as expected, then the school must return the check to the lender within 30 days of such determination.
22. On or about May 15, 1984, the University determined that Whittum was not enrolled at the University.

23. On or about May 15, 1984, the University returned the proceeds of Loan Number 2 to Citibank and/or its assignees which resulted in Loan Number 2 being paid in full.

24. Loan Number 1 was paid in full by Whittum.

25. Based upon information and belief, in 2003, ECMC was assigned the agreements for Loan 1 and Loan 2.

26. Based upon information and belief, the obligations and rights of Citibank under Loan 1 and Loan 2 are now the obligations and rights of ECMC.

## FACTS AS TO COLLECTION ACTIVITIES

27. By notice dated January 11, 2018 GC Services, as an authorized agent of ECMC, sent its first communication to Whittum ("January 11, 2018 Correspondence").

28. A true and correct copy of the January 11, 2018 Correspondence is attached hereto as Exhibit 1.

29. The January 11, 2018 Correspondence was entitled Notice to Wage Withholding and stated that such correspondence was dated January 11, 2018.

30. The January 11, 2018 Correspondence was received by Whittum after January 11, 2018.

31. On the first page of the January 11, 2018 Correspondence, it stated in part, "GC Services LP is assisting ECMC with administrative activities associated with administrative wage garnishment. You must establish a repayment agreement with GC Services, acting on behalf of ECMC, **within 30 days of the date of this Notice**, by calling GC Services. Otherwise, ECMC will proceed with the wage garnishment process." (Emphasis added).

32. On the first page of the January 11, 2018 Correspondence, it stated in part: "[y]ou have the right to request a hearing, **within thirty (30) days of the date of this Notice**, for any objection regarding the existence, amount or enforceability of the debt…" (Emphasis added).

33. On the first page of the January 11, 2018 Correspondence, it stated that in order to request a hearing, "[c]omplete the enclosed form and return it to GC Services **within thirty (30) days of the date of this Notice**". (Emphasis added).

34. The January 11, 2018 Correspondence stated that if you request that your hearing be held via telephone, a conference call **will be** set up between you, GC Services LP and the hearing official. (Emphasis added).
35. The January 11, 2018 Correspondence stated in part that disputing the existence of the debt is a valid reason for requesting a hearing.
36. The January 11, 2018 Correspondence stated that "**[u]nless you act within thirty (30) days of the date of this Notice**, your employer will be ordered to deduct from your wages an amount equal to no more than fifteen percent (15%) of your disposable pay…" (Emphasis added).
37. The January 11, 2018 Correspondence also provided general consumer information that in part, is required under the Fair Debt Collection Practices Act.
38. By letter dated February 5, 2018 to GC Services, Whittum disputed the debt, requested a telephonic hearing and also requested copies of the records of ECMC and GC Services ("February 5, 2018 Correspondence").
39. Based upon information and belief, GC Services received the February 5, 2018 Correspondence.
40. By letter dated February 20, 2018, Whittum advised GC Services that they had not provided her with the student loan records from 1982 to 2003, the payment records from 1982 to 2003, the signed promissory notes and student loan records from 1982 to 1986.
41. By letter dated February 28, 2018, GC Services acknowledged the dispute with ECMC and provided a print out of the history of Loan 1 and Loan 2 from 2003 to 2018.
42. By letter dated March 28, 2018, Whittum advised GC Services that they had failed to provide records from the 1980s and 1990s and did not provide her with a hearing date and time.
43. Based upon information and belief, it is alleged that no time prior to the filing of this Complaint, did ECMC nor GC Services ever obtain the original payment history records of Citibank from Loan 1 and Loan 2.

44. By letter dated March 28, 2018, which was received by Whittum after March 28, 2018, the National Association for Dispute Resolution provided Whittum with a copy of a judgment of final determination, which stated that the hearing was on March 27, 2018 ("March 27, 2018 Hearing"), that notice was provided to Whittum, that Whittum was not available on March 27, 2018, that no party was present at the hearing, that Whittum did not provide sufficient evidence to establish a defense to the garnishment and that ECMC was entitled to proceed with the garnishment ("Arbitration Award")
45. At no time was Whittum ever provided notice of the March 27, 2018 Hearing.
46. At no time was Whittum ever given an opportunity to appear telephonically at the March 27, 2018 Hearing.
47. After the March 27, 2018 Hearing, ECMC, by and through GC Services, submitted an administrative garnishment to Whittum's employer.
48. After the March 27, 2018 Hearing, ECMC, by and through GC Services, has been garnishing 15% of Whittum's disposable pay for each pay period.

## FIRST CAUSE OF ACTION AGAINST ECMC
## (Breach of Fiduciary Duty)

49. Whittum restates and realleges all of the allegations contained within paragraphs 1-48 as if fully stated herein.
50. ECMC has a contractual, statutory and fiduciary obligation to protect the rights of Whittum under the federal administrative rules contained in part under 34 CFR 682.410.
51. Based upon information and belief, GC Services entered into an agreement with ECMC to become ECMC's agent for purposes of complying with the administrative rules contained in part under 34 CFR 682.410.
52. As the agent of ECMC, GC Services has a contractual, statutory and fiduciary obligation to protect the rights of Whittum under the federal administrative rules contained in part under 34 CFR 682.410.

53. ECMC has the obligation to fully comply with the administrative garnishment rules prior to seeking garnishment of Whittum's wages.
54. GC Services has the obligation to fully comply with the administrative garnishment rules prior to seeking garnishment of Whittum's wages.
55. ECMC must offer and provide Whittum with an opportunity to inspect and copy ECMC's records related to Loan 1 and Loan 2.
56. Whittum made demand for an opportunity to inspect and copy ECMC's records.
57. ECMC and its agent GC Services did not permit Whittum to inspect and copy ECMC's records.
58. ECMC must offer and provide Whittum with an opportunity for a hearing on any administrative garnishment.
59. Whittum made a timely written demand for a telephonic hearing on the administrative garnishment.
60. Once Whittum made the timely demand for a telephonic hearing, ECMC and/or its agent GC Services must notify Whittum of the process for arranging the time and location of the telephonic hearing.
61. All telephonic charges for such hearing are the responsibility of ECMC.
62. ECMC and its agent GC Services failed to notify Whittum of the process for arranging the time and location of the telephonic hearing.
63. ECMC was required to provide notice of the hearing to Whittum.
64. ECMC was required to provide Whittum with all documents that it intended to utilize at the time of the hearing.
65. ECMC may not issue a withholding order until providing Whittum with the requested telephonic hearing.
66. ECMC and GC Services breached its fiduciary duty along with its contractual and statutory obligation to Whittum by failing to permit Whittum with an opportunity to inspect and copy ECMC's records; failing to notify Whittum of the process for arraigning the time and location of the telephonic hearing; failing to provide notice of the date and

time of the hearing; failing to provide the records that it intended to utilize at the time of the hearing and by submitting a withholding order prior to ensuring that Whittum was provided the requisite telephonic hearing.

67. ECMC and GC Services willfully or with reckless disregard to Whittum's federal rights failed to comply with the requirements for an administrative wage garnishment.

68. Whittum is entitled to actual damages, punitive damages, and reasonable attorney fees and costs as a result of ECMC's and GC Services breaches of its obligations and fiduciary duties.

## **SECOND CUASE OF ACTION**

### **(Breach of Contract)**

69. Whittum restates and realleges all of the allegations along with the relief requested which was contained within paragraphs 1-68 as if fully stated herein.

70. ECMC is the assignee of Loan 1 and Loan 2.

71. ECMC has the obligations to perform under the terms of Loan 1 and Loan 2.

72. ECMC breached the agreement under Loan 1 by seeking to recover on a debt that had been paid in full.

73. ECMC breached the agreement under Loan 2 by seeking to recover on a debt that was paid in full.

74. ECMC breached the covenant of good faith and fair dealings by seeking recovery under Loan 1 and Loan 2.

75. Whittum has been damaged by ECMC's breaches of Loan 1 and Loan 2.

76. Whittum retained the services of an attorney to remedy the ECMC's breaches of Loan 1 and Loan 2.

77. Whittum is entitled to actual damages, including but not limited to attorney fees and costs as a result of ECMC's breaches of Loan 1 and Loan 2.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

78. Whittum restates and realleges all of the allegations along with the relief requested which was contained within paragraphs 1-77 as if fully stated herein.

79. In violation of federal administrative rules, ECMC, by and through its agent GC Services, has unlawfully garnished the wages of Whittum.

80. ECMC has received a benefit from its unlawful garnishment of Whittum's wages.

81. Based upon information and belief, GC Services has received a benefit from its unlawful garnishment of Whittum's wages.

82. ECMC has accepted and retained the benefit of receiving funds from its unlawful garnishment under circumstances where it would be inequitable for ECMC to retain the benefit.

83. Based upon information and belief, GC Services has accepted and retained the benefit of receiving funds from its unlawful garnishment under circumstances where it would be inequitable for GC Services to retain the benefit.

84. ECMC and GC Services willfully or with reckless disregard to Whittum's rights have been unjustly enriched by utilizing a federal administrative wage garnishment to garnish the funds of Whittum.

85. Whittum is entitled to actual damages consisting of the amount of the garnishment that ECMC and GC Services received from this unlawful garnishment, punitive damages along with attorney fees and costs.

## FOURTH CAUSE OF ACTION

### (Conversion)

86. Whittum restates and realleges all of the allegations along with the relief requested which was contained within paragraphs 1-85 as if fully stated herein.

87. ECMC unlawfully utilized an administrative garnishment proceeding to garnish the wages of Whittum.

88. Based upon information and belief, GC Services unlawfully utilized an administrative garnishment proceeding to garnish the wages of Whittum
89. ECMC does not have a legal right to possession of the wages of Whittum.
90. GC Services does not have a legal right to possession of the wages of Whittum.
91. ECMC knowingly, intentionally and willfully utilized a federal administrative process to take possession of property of Whittum.
92. GC Services knowingly, intentionally and willfully utilized a federal administrative process to take possession of property of Whittum.
93. Whittum is entitled to actual damages, punitive damages, and reasonable attorney fees and costs as a result of ECMC's and GC Services' actions.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief and an Accounting)**

94. Whittum restates and realleges all of the allegations along with the relief requested which was contained within paragraphs 1-93 as if fully stated herein.
95. As an alternative form of relief, Whittum requests this Court for declaratory relief and an accounting to determine the amount, if any, due and owing on Loan 1 and Loan 2.
96. Whittum requests this Court for declaratory relief as to the Arbitration Award to determine that such award was improperly entered.
97. Whittum contends that there are no funds due and owing under either Loan 1 or Loan 2.
98. Based upon information and belief, ECMC and GC Services, unreasonably contends that there are funds due and owing under either Loan 1 or Loan 2.
99. Based upon information and belief, ECMC and GC Services, unreasonably contends that the Arbitration Award permitting the administrative garnishment was lawfully entered.
100. Whittum contends that the Arbitration Award was entered without due process, without notice and with the failure of ECMC and GC Services to fully comply with the federal rules and regulations concerning such Arbitration Award for an administrative garnishment.

101. A controversy exists, legitimate or not legitimate, as to any amounts due under Loan 1 or Loan 2.
102. Whittum is requesting this Court to declare that there are no amounts due and owing under Loan 1 or Loan 2.
103. A controversy exists as to the validity of the Arbitration Award for an administrative garnishment.
104. Whittum contends that the Arbitration Award was unlawfully entered.
105. Whittum is requesting this Court to declare that the Arbitration Award is unenforceable.

## SIXTH CAUSE OF ACTION

### (Violation of the Fair Debt Collection Practices Act)

106. Whittum restates and realleges all of the allegations along with the relief requested which was contained within paragraphs 1-105 as if fully stated herein.
107. GC Services is a debt collector.
108. GC Services first communication with Whittum was the January 11, 2018 Correspondence.
109. The language in the January 11, 2018 Correspondence sent by GC Services contained language in multiple parts that required a response <u>within 30 days of the date of the letter</u>. (Emphasis added).
110. The language in the January 11, 2018 Correspondence violated the Fair Debt Collection Practices Act, when reviewed under the least sophisticated debtor standard, as the language overshadowed, conflicted with the FDCPA debt validation rights under 15 U.S.C. §1692g, which in part permits a response <u>within 30 days of the receipt of the letter</u>. (Emphasis added).
111. Whittum is requesting actual and punitive damages, statutory damages of $1,000.00, plus reasonable attorney fees and costs for GC Services violation of the Fair Debt Collection Practices Act.

WHEREFORE, Whittum respectfully requests this Court

1. For an award of actual damages to be established at trial;
2. For an award of statutory damages under the Fair Debt Collection Practices Act;
3. For an award of compensatory, punitive and other damages alleged herein in an amount in excess of $75,000 but to be determined at trial;
4. For an award of costs and reasonable attorney fees;
5. For an award of such other relief, including equitable relief, as the Court deems just and proper.

DATED August 11, 2018

/s/ Brian D. Shapiro, Esq.

BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
**LAW OFFICE OF BRIAN D. SHAPIRO, LLC**
510 S. 8th Street
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0914
Email: brian@brianshapirolaw.com

*Attorney for Leisa Whittum*