**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Leisa Whittum,

Plaintiff

v.

Educational Credit Management Corporation; and CG Services, LP,

Defendants

Case No.: 2:18-cv-01495-JAD-DJA

**Order Granting in Part Motion for Summary Judgment, Denying as Moot Countermotion to Withdraw Admissions, and Directing Clerk of Court to Enter Judgment and Close this Case**

[ECF Nos. 21, 30]

Student-borrower Leisa Whittum contends that guaranty agency Educational Credit Management Corporation (ECMC) has been garnishing her wages since March 27, 2018, for two student loans from the early 1980s that have been paid in full.[1] Whittum alleges that she disputed the debts with ECMC and requested the loan file and a telephonic hearing. But ECMC did not tell Whittum when the hearing was scheduled, held it in her uninformed absence, and produced only the records from after the loan was assigned to it in 2003. So, Whittum sues ECMC for breach of fiduciary duty, breach of contract, unjust enrichment, conversion, declaratory relief, and violations of the Fair Debt Collection Practices Act (FDCPA).[2]

ECMC moves for summary judgment on all of Whittum's claims, arguing that Whittum's failure to timely respond to its requests for admissions makes the factual issues raised in those requests "conclusively established" under Rule 36 of the Federal Rules of Civil Procedure.[3]

[1] ECF No. 1 (complaint). The claims against CG Services, LP were dismissed upon the stipulation of the parties. ECF Nos. 23 & 24 (stipulation and corrected image); 25 (order granting stipulation).

[2] 15 U.S.C. §§ 1692 et seq.

[3] ECF No. 21 (summary-judgment motion).

ECMC also argues that Whittum's claims fail because they are either expressly or impliedly preempted by the Higher Education Act (HEA) of 1965,[4] they conflict with that Act, and there is no private right of action under it. ECMC further argues that Whittum's claim under the FDCPA does not clearly state that it is alleged against ECMC and, in any event, ECMC does not qualify as a "debt collector" under that Act.

Whittum countermoves to withdraw her admissions, concedes in her response that she did not intend to plead a claim under the FDCPA against ECMC, and argues that her five remaining claims are not preempted by the HEA because that statutory scheme does not afford her a remedy.[5] I dismiss Whittum's FDCPA claim and grant summary judgment in ECMC's favor on her remaining claims on the grounds that no private right of action exists under the HEA and the claims are prohibited under the doctrine of conflict preemption.

## Discussion

### A. Legal standard for summary judgment

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[6] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[7] If reasonable minds could differ

---

[4] 20 U.S.C. §§ 1001–1155.

[5] ECF No. 30 (countermotion and response).

[6] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[7] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[8]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[9] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[10]

**B. Whittum consents to dismiss her claim under the FDCPA.**

ECMC moves for summary judgment on Whittum's sixth claim for relief, which alleges that former defendant GC Services violated the FDCPA.[11] In her response to ECMC's summary-judgment motion, Whittum "concedes that ECMC is not subject to" that claim and thus "consents to [it] being dismissed."[12] Whittum's sixth claim for relief is therefore dismissed.

**C. Whittum's remaining claims and the HEA**

Whittum's remaining claims for relief allege that ECMC breached the fiduciary duties that it owes to her under federal regulations that implement the HEA, breached the terms of the loan agreements, has been unjustly enriched by garnishing her wages, and converted her wages.[13] ECMC argues that it is entitled to summary judgment on all of Whittum's claims

---

[8] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[10] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

[11] ECF No. 21 at 15–22.

[12] ECF No. 30 at 9.

[13] Whittum acknowledges that her fifth "cause of action" for declaratory relief and accounting is simply a prayer for those equitable remedies. ECF No. 30 at 10.

because they are expressly and impliedly preempted by the HEA and that Act does not provide a private right of action. I begin with a brief discussion of the HEA.

***1. Background of the HEA and FFELP***

The HEA was passed "to keep the college door open to all students of ability, regardless of socioeconomic background."[14] One part of the HEA is the Federal Family Education Loan Program (FFELP),[15] which is "a system of loan guarantees meant to encourage lenders to loan money to students and their parents on favorable terms."[16] "The Secretary of the Department of Education (DOE) is authorized to 'prescribe such regulations as may be necessary to carry out the purposes' of the FFELP."[17] "Under that authority, the DOE has promulgated detailed regulations" to implement the FFELP.[18]

"Under the HEA, eligible lenders make guaranteed loans on favorable terms to students or parents to help finance student education. The loans are typically guaranteed by guaranty agencies and are ultimately reinsured by the DOE."[19] As defined in the FFELP regulations, a "guaranty agency" is "[a] state or private nonprofit organization that has an agreement with the [DOE's] Secretary under which it will administer a loan guarantee program under the [HEA]."[20] A guaranty agency thus "serves as an intermediary between the United States and the lender of the student loan"; "[t]he United States is the loan guarantor of last resort."[21]

---

[14] *Rowe v. Edu. Credit Mgmt. Corp.*, 559 F.3d 1028, 1030 (9th Cir. 2009) (quotation omitted).

[15] 20 U.S.C. at §§ 1071–1087-4.

[16] *Chae v. SLM Corp.*, 593 F.3d 936, 938 (9th Cir. 2010).

[17] *Id.* at 939.

[18] *Id.*

[19] *Rowe*, 559 F.3d at 1030 (quotation omitted).

[20] *Id.* (quoting 34 C.F.R. § 682.220).

[21] *Id.* (quotation omitted).

When a borrower defaults on a loan and the lender is unable to get the borrower to repay it, "the lender files a claim with the guaranty agency" and "[t]he guaranty agency[,] act[ing] as a guarantor, pay[s] the lender the unpaid balance of the defaulted loan."[22] "The guaranty agency is then assigned the loan by the lender."[23] "Depending on the precise agreement between a guaranty agency and the DOE, the agency can then recover from the DOE 80 to 100 percent of its losses resulting from a defaulted loan, provided that the guaranty agency engages in 'due diligence' in seeking to recover on the defaulted loan."[24] "A guaranty agency's due diligence requirements include . . . initiating administrative garnishment proceedings against the borrower . . . ."[25] It is against this backdrop that I analyze ECMC's summary-judgment arguments and Whittum's remaining claims for breach of fiduciary duty, breach of contract, unjust enrichment, and conversion.

***2. No private right of action exists under the HEA for Whittum's claims.***

ECMC first argues that Whittum's claims fail because they "are fundamentally based on purported violations of the HEA and its implementing regulations[,]" but only the Secretary of Education has authority to enforce that Act; there is no private right of action under the HEA.[26] To support its argument, ECMC cites several cases in which circuit courts have found—applying

---

[22] *Id.* (citing 34 C.F.R. §§ 682.411, 682.412(e)(2)).

[23] *Id.* (citing 34 C.F.R. § 682.410(b)(5)(vi)).

[24] *Id.* (citing 20 U.S.C. § 1078(c); 34 C.F.R. § 682.410).

[25] *Id.* (citing 34 C.F.R. § 682.410(b)(6)(i)–(iv)).

[26] ECF No. 21 at 8–9.

the four-factor test enunciated by the Supreme Court in *Cort v. Ash*[27]—that the HEA does not contain an express or implied right of action.[28]

Among the cases that ECMC cites is *Parks School of Business v. Symington*, a Ninth Circuit case that arose when Parks School's participation in Arizona's loan guarantee program was terminated by that State's designated guarantor of student loan programs.[29] The school sued the guarantor, alleging that it did not receive a hearing before its participation was terminated and claiming that the lack of a hearing violated its due process rights under the Fifth and Fourteenth Amendments and its rights under 42 U.S.C. §§ 1983 and 1981 and the Equal Protection Clause.[30] One of the several issues that the Ninth Circuit addressed in *Parks* was whether a private right of action exists under the HEA. The Ninth Circuit explained that there is "no express right of action under the HEA except for suits brought by or against the Secretary of Education."[31] It then applied the *Cort* test to determine if a "private right of action for educational institutions to sue loan guarantors was implied in the statute."[32]

The Ninth Circuit found that the first factor—"whether the plaintiff is one of the class for whose especial benefit the statue was enacted"—weighed against the plaintiff because it is a

---

[27] *Cort v. Ash*, 422 U.S. 66 (1975).

[28] ECF No. 21 at 9 (citing *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1485 (9th Cir. 1995) (reiterating that "[t]here is no express right of action under the HEA except for suits brought by or against the Secretary of Education" and declining to infer any such right for educational institutions against loan guarantee programs); *L'ggrke v. Benkula*, 966 F.2d 1346, 348 (10th Cir. 1992) (concluding that the HEA did not create an implied private right of action for student-borrower against educational institution); *McCulloch v. PNC Bank*, 298 F.3d 1217 (11th Cir. 2002) (concluding that an implied private right of action cannot be implied under the HEA for parents of college-bound students against lenders and marketers of student loans)).

[29] *Parks*, 51 F.3d 1480.

[30] *Id.* at 1483.

[31] *Id.* at 1484 (citing 20 U.S.C. § 1082(a)(2)).

[32] *Id.* (citing *Cort*, 422 U.S. at 78).

school and "the HEA was enacted to benefit students."[33] The second factor requires the court to "examine legislative history to see if [it] can discern any intent either to create or deny a right of action under the statute."[34] The Ninth Circuit noted that this inquiry is the most "critical" of the four factors. Dovetailing the congressional-intent inquiry is the third factor, which requires the court to "weigh whether implying a right of action would be consistent with the purposes of the legislative scheme."[35] The Ninth Circuit found that neither factor weighed in favor of the school. It explained that "the HEA is silent on the issue of private rights of action" and "allowing a direct action against a loan guarantee program" like what the school sought "is unlikely to significantly advance any of the goals of the statute . . . ."[36] The Ninth Circuit also set forth the "extensive web of enforcement mechanisms" that it found "both illuminates congressional intent and tips the third *Cort* factor against Parks."[37]

The final factor requires the court to ask "whether the cause of action is one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law."[38] The Ninth Circuit determined that this factor weighed slightly in favor of the school because its claims arose from rights that "emanate from the Constitution and are traditionally matters of federal concern."[39] But, the court noted, "if the difficulty is simply that [the guarantor] did not follow the guidelines required by the statute and regulations, that issue

---

33 *Id.*

34 *Id.*

35 *Id.*

36 *Id.* at 1484–85.

37 *Id.* at 1485.

38 *Id.* at 1484.

39 *Id.* at 1485.

should have been presented to the Secretary, who was in a position to correct the problem."[40] The Ninth Circuit concluded that "the balance . . . tips sharply in favor of a determination that Congress did not intend to create an implied right of action in the HEA for institutions and against loan guarantee programs."[41]  It therefore "decline[d] to infer any such right" into the statute for the school's benefit.[42]

*Parks*'s application of the *Cort* factors guides my analysis here.  The first *Cort* factor tips in Whittum's favor because she was a student borrower.  But the second and third factors do not.  Section 1082 of the HEA grants the Secretary of Education "wide-ranging authority to enforce the provisions of the" HEA and, like in *Parks*, "that includes avenues of redress for the alleged violations of the Act complained of by [Whittum]."[43]  Section 1082(g)(1)(A) authorizes the Secretary to impose penalties on a guaranty agency if that agency is found, after reasonable notice and an opportunity to be heard, to have violated or failed to carry out any provision of the FFELP part of the Act or regulations prescribed under it.  The regulations that implement the Act similarly authorize the Secretary to take "remedial actions against a guaranty agency . . . that . . . violates any applicable Federal requirement . . . ."[44]  The final *Cort* factor also does not favor Whittum because her remaining causes of action are traditionally relegated to state law but,

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *See id.*

[44] 34 C.F.R. § 682.413(c)(1) (also providing that permitted remedial actions include the ability to suspend or terminate agreements with the agency, impose fines on the agency, withhold payments to the agency, and limit the terms and conditions of the agency's continued participation in the FFELP).

unlike the school's claims in *Parks*, they are not alleged through the lens of the U.S. Constitution.[45]

The two paragraphs that Whittum offers in response to this argument do not address the *Cort* factors or how they apply in this case.[46] Whittum instead attacks the issue from the side by insisting that she did not file suit directly under the HEA and arguing that the Act "does not provide any remedy to [her] to determine the validity of the amount owed, if any, on the [loans]."[47] Whittum's response misses the point that her claims, except for breach of contract, allege that ECMC violated the provisions of the HEA or the regulations that implement that Act.[48] Whittum is also wrong that the HEA doesn't afford her the ability to challenge the existence of the debt or the amount owed: the Act expressly provides "an opportunity for a hearing" on those issues.[49] The upshot of my analysis of the *Cort* factors is that I decline to infer a private right of action in the HEA for Whittum's claims against ECMC.

***3. Whittum's claims are impliedly prohibited by conflict preemption.***

ECMC also argues that Whittum's remaining claims are expressly and impliedly preempted by the HEA.[50] Its express-preemption argument is grounded in 34 C.F.R. §§ 682.410(b)(8) and 682.411(o)(1). Section 682.411 concerns lender due diligence in collecting guaranty agency loans, and paragraph (o) of that section provides that it "[p]reempt[s] any State

---

[45] However, federal law supplies the duty element of Whittum's breach-of-fiduciary-duty claim.

[46] ECF No. 30 at 9–10.

[47] *Id.* at 9.

[48] *See, e.g.*, ECF No. 1 at ¶¶ 53, 55, 58, 79, 87.

[49] *See, e.g.*, 20 U.S.C. § 1095a(a)(5) (providing that "the individual shall be provided with an opportunity for a hearing in accordance with subsection (b) on the determination of the Secretary or the guaranty agency, as appropriate, concerning the existence or the amount of the debt").

[50] ECF No. 21 at 9–15.

law . . . that would conflict with or hinder satisfaction of the requirements or frustrate the purposes of this section."[51] Section 682.410(b)(8) states that the "provisions of paragraphs (b)(2), (5), and (6) of this section preempt any State law . . . that would conflict with or hinder satisfaction of the requirements of these provisions." Paragraph (b)(2) addresses collection charges, paragraph (b)(5) addresses reports to consumer reporting agencies, and paragraph (b)(6) addresses collection efforts on defaulted loans.

ECMC makes no effort to argue how any of Whittum's state claims "would conflict with or hinder satisfaction of the requirements" of either regulation. It points out that other courts have concluded that state claims are preempted by the HEA, but in none of the cases that ECMC cites did the court find that claims like those alleged here by Whittum were expressly preempted.[52] I decline to engage in this analysis in the first instance for ECMC.

What remains is ECMC's argument that Whittum's claims are impliedly preempted by the HEA because they conflict with that Act and, thus, hinder or prohibit the collection activities

---

[51] 34 C.F.R. § 682.411(o)(1).

[52] ECF No. 21 at 12 (citing *Hunt v. Sallie Mae, Inc.*, 2011 WL 2847428, at *1 (E.D. Mich. July 19, 2011) (alleging claims under the FDCPA, Michigan's Occupational Code and Collection Practices Act, and Michigan's common law for intentional infliction of emotional distress); *Martin v. Sallie Mae, Inc.*, 2007 WL 4305607, at *2, (S.D. W. Va. Dec. 7, 2007) (construing plaintiff's complaint as alleging claims for, among other things, breach of contract and negligence but dismissing contract claim because plaintiff "does not allege any breach of the . . . [a]greement on behalf of Sallie Mae" and dismissing negligence claim because "[p]laintiff failed to allege the existence of a legal duty owed to him by Sallie Mae"); *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996) (concluding that plaintiff's claims under Oregon's Unfair Debt Collection Practices Act are preempted by the HEA); *Pirouzian v. SLM Corp.*, 365 F. Supp. 2d 1124, 1128–29 (S.D. Cal. 2005) (concluding that plaintiff's claims under California's Fair Debt Collection Practices Act are preempted by the HEA); *Seals v. Nat. Student Loan Program*, 2004 WL 3314948, at *5–6 (N.D. W. Va. Aug. 16, 2004) (concluding that plaintiff's claims under West Virginia's Consumer Credit and Protection Act are preempted by the HEA)).

of guaranty agencies.[53] ECMC relies on the Ninth Circuit's decision in *Chae v. SLM Corp.* to support its argument. In *Chae*, after conducting an exhaustive analysis, the Ninth Circuit concluded that conflict preemption prohibited the plaintiff's claims under California law for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and the use of fraudulent and deceptive practices apart from in billing statements "because, if successful, [those claims] would create an obstacle to the achievement of congressional purposes."[54] ECMC argues that the same result would occur if Whittum is successful on her similar claims.

Whittum does not address *Chae* in her response.[55] Instead, she argues that her claims are not preempted by the HEA because she is not suing under the HEA but "based upon the contractual relationship between ECMC as the assignee to the originating creditor."[56] Whittum's argument misunderstands the concept of conflict preemption, and her failure to address *Chae* gives me no basis from which I could conclude that her remaining claims, if successful, would not interfere with Congress's intent that the FFELP operate uniformly.[57] ECMC has therefore demonstrated that, under *Chae*, Whittum's claims are prohibited by conflict preemption.

**Conclusion**

IT IS THEREFORE ORDERED that ECMC's motion for summary judgment **[ECF No. 21] is GRANTED in part**. Whittum's FDCPA claim against ECMC is dismissed. The

---

[53] *Id.* at 13–15.

[54] *Chae*, 593 F.3d at 944–50.

[55] ECF No. 30 at 9–10.

[56] *Id.* at 10.

[57] Because I determine that ECMC is entitled to summary judgment on Whittum's claims on preemption and private-right-of-action grounds, I need not and do no reach ECMS's other arguments nor Whittum's countermotion to withdraw her admissions.

Clerk of Court is directed to enter judgment in ECMC's favor on Whittum's claims for breach of fiduciary duty, breach of contract, unjust enrichment, and conversion. The Clerk of Court is also directed to CLOSE THIS CASE.

IT IS FURTHER ORDERED that Whittum's countermotion to withdraw her admissions **[ECF No. 30] is DENIED as moot**.

U.S. District Judge Jennifer A. Dorsey
July 2, 2020